# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VENUS TERRIE GIDEON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. 1:14-cv-628-BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

　　　　Plaintiff Venus Terrie Gideon ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act.[1]  The matter is before the Court on the parties' briefs, which were submitted without oral argument to Magistrate Judge Barbara A. McAuliffe.  The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards.  Accordingly, this Court affirms the agency's determination to deny benefits.

///

---

[1]　　Pursuant to 28 U.S.C. § 636(c), the parties consented to conduct all further proceedings in this case before the Honorable Barbara A. McAuliffe, United States Magistrate Judge. (Docs. 6, 9).

1

**FACTS AND PRIOR PROCEEDINGS**

In a decision dated June 24, 2004, Plaintiff was found to be disabled beginning January 23, 2004 and awarded SSI benefits due to a history of depression. AR 67. On August 26, 2011, the agency began a Continuing Disability Review ("CDR"). AR 68. On November 11, 2011, it determined that Plaintiff's disability had ended on November 1, 2011 and that she was no longer eligible for benefits on the basis of medical improvement. AR 68-73, 128-131. Plaintiff sought reconsideration of that decision, which the agency ultimately upheld, after which Plaintiff requested a hearing before an ALJ. AR 74-89, 99, 142.

On May 22, 2012, Plaintiff appeared for a hearing before ALJ Patricia Leary Flierl. AR 23-63. In a decision dated January 10, 2013, the ALJ found Plaintiff's condition had improved, and that her disability had ended on November 1, 2011. AR 16. Plaintiff appealed ALJ Flierl's decision to the Appeals Council, which denied her request for review, making ALJ Flierl's decision the Commissioner's final decision for purposes of judicial review. AR 1-3. Plaintiff subsequently filed this action.

**Plaintiff's Testimony**

The ALJ held a hearing on December 19, 2012, in Fresno, California. AR 25-63. Plaintiff appeared and testified. AR 25. She was represented by attorney Jonathan Pena. AR 25.[2]

Plaintiff was born on December 19, 1965, and 47 years old at the time of the hearing. AR 26. Plaintiff has an eleventh grade education and previously worked as a part-time food server but has not worked since 2003. AR 27-30. Plaintiff alleges disability due to problems remembering, anger, and anxiety. AR 287. Plaintiff stated that she had been diagnosed with bipolar disorder and took Seroquel and Zoloft; the medications helped with her symptoms and she did not experience any side effects. AR 31-32, 42-43. She claimed that other people made her uncomfortable and nervous. AR 33-34. Plaintiff testified that she saw a "regular" doctor and also a psychiatrist, who prescribed medications. AR 38-40.

When asked about her daily activities, Plaintiff testified that she was able to drive a car, use public transportation, and take care of grocery shopping on her own. AR 35-37. Plaintiff's niece

---

[2] Vocational Expert Cheryl Chandler also testified at the hearing; however, the VE testimony is unrelated to Plaintiff's appeal.

handled her previous disability funds and distributed money to Plaintiff so that she could pay bills; Plaintiff also received food stamps, which she managed on her own. AR 44-46. Plaintiff said she watched television, handled her own mail, washed dishes, cleaned, took care of chores around the house, and occasionally watched movies and went to church. AR 43, 47-49.

Plaintiff's friend, Delfina Lively, testified at the hearing and asserted that Plaintiff was nervous sometimes, had difficulty concentrating or paying attention to conversations, and sometimes had mood swings. AR 51-53, 57. Ms. Lively said she reminded Plaintiff about appointments and medications, spoke to Plaintiff on the telephone, and went to the mall with her 3-4 times a week. AR 53-56. Plaintiff also accompanied Ms. Lively to medical appointments. AR 55.

Thereafter, the ALJ asked vocational expert Cheryl Chandler several hypothetical questions contemplating an individual of the same age, education and background as Plaintiff. AR 58-63. The ALJ presented the VE with a hypothetical question involving a person of Plaintiff's age and education with no past relevant work, who was able to do medium work with the following limitations: must avoid temperature extremes, humidity and wetness; must avoid concentrated exposure to dust and fumes; limited to simple, repetitive tasks with no interaction with the general public; and limited to job tasks that primarily involve working with objects. AR 58. The VE opined that this hypothetical individual could perform jobs including cook's helper, dishwasher, and hand packager. AR 58-59. The VE testified that no jobs would be available if the individual was unable to complete a workday without significant psychiatric interruptions and was unable to concentrate in two-hour increments. AR 61. The VE also stated no jobs would be available if the individual was unable to maintain socially appropriate behavior or she missed three workdays per month due to psychiatric symptoms. AR 61-62.

**Medical Record**

The entire medical record was reviewed by the Court. AR 295-583. The medical evidence will be referenced below as necessary to this Court's decision.

**LEGAL STANDARDS**

Social security claimants have the initial burden of proving disability. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). "Once a claimant has been found to be disabled, however, a presumption of continuing disability arises in her favor." *Bellamy v. Secretary*

3

*of Health and Human Services*, 755 F.2d 1380, 1381 (9th Cir. 1985) (*citing Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir. 1983)). Balancing this presumption of continued disability however, are provisions of the Act and its implementing regulations that are designed "to encourage individuals who have previously suffered from a disability to return to substantial gainful employment when their medical condition improves sufficiently to allow them to do so." *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1458 (9th Cir. 1995).

Accordingly, a claimant who has been awarded disability benefits is required to undergo periodic disability reviews, "to determine whether a period of disability has ended." *Flaten*, 44 F.3d at 1460; *Schweiker v. Chilicky*, 487 U.S. 412, 415, 108 S. Ct. 2460, 101 L.Ed. 2d 370 (1988) (most disability determinations must be reviewed at least once every three years); *see* 42 U.S.C. § 421(i)(1) (cases must be reviewed for continuing eligibility "at least once every three years"); 20 C.F.R. § 404.1594 (rule governing termination of benefits). To determine whether a claimant continues to be disabled for purposes of receiving SSI benefits, the Commissioner engages in an seven-step sequential evaluation process.

**The ALJ's Decision**

The ALJ first noted that Plaintiff's June 24, 2004, disability determination found her depression was a medically determinable impairment that met Listing 12.04A for affective mental disorders. AR 9, 64-65. See 20 C.F.R. Pt. 404, Subpt. P, Appx. 1. The ALJ found however that as of November 1, 2011, Plaintiff had the following current medically determinable impairments: generalized anxiety disorder, bipolar disorder, asthma, and a history of substance abuse in remission. AR 10. The ALJ then applied the seven-step sequential evaluation process to determine whether Plaintiff's disability continued. AR 8-9. *See* 20 C.F.R. § 416.994(b)(5)(i)-(vii).

At Step One of the evaluation, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment. AR 10-11. *See* 20 C.F.R. § 416.994(b)(5)(i); 20 C.F.R. Pt. 404, Subpt. P, Appx. 1. At Step Two, the ALJ found that Plaintiff's current impairments as of November 1, 2011 included the following medically determinable impairments: generalized anxiety disorder, bipolar disorder, asthma, and a history of substance abuse in remission. AR 10. However, the ALJ determined that after considering all of Plaintiff's listed impairments individually, and in combination with one another, that since

4

November 1, 2011, Plaintiff did not have an impairment or combination of impairments which meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 10.

At Step Three, the ALJ found that medical improvement had occurred as of November 1, 2011, as shown by a decrease in the medical severity of the impairment present at the time of the comparison point decision or "CPD," and the medical improvement was related to her ability to work. AR 11. See 20 C.F.R. § 416.994(b)(5)(ii)-(iii); 20 C.F.R. § 416.994(b)(2)(iv)(A) (where a claimant's previous impairment met or equaled a listing, "[i]f medical improvement has occurred and the severity of the prior impairment(s) no longer meets or equals the same listing section used to make our most recent favorable decision, we will find that the medical improvement was related to your ability to work").

At Step Five,[3] the ALJ concluded that Plaintiff's current impairments were severe. AR 11. See 20 C.F.R. § 416.994(b)(5)(v). At Step Six, the ALJ assessed Plaintiff's current ability to do substantial gainful activity. See 20 C.F.R. § 416.994(b)(5)(vi). The ALJ determined Plaintiff had the residual functional capacity ("RFC") to lift and carry 50 pounds occasionally and 25 pounds frequently; she could stand and walk for 6 hours and sit for 6 hours in an 8-hour workday; she must avoid concentrated exposure to dust and fumes, and all exposure to temperature extremes, humidity and wetness; she was limited to performing simple and repetitive tasks with no interaction with the general public; and her job tasks must primarily involve working with objects. AR 12.

Finally, at Step Seven, the ALJ determined that Plaintiff did not have any past relevant work but concluded she was no longer disabled because, based on Plaintiff's age, education, work experience and RFC, she has been able to perform jobs since November 1, 2011 that exist in significant numbers in the national economy. AR 16. See 20 C.F.R. § 416.994(b)(5)(vii).

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial

---

[3]   Since the ALJ found Plaintiff's medical improvement was related to her ability to work, step four of the evaluation was inapplicable. See 20 C.F.R. § 416.994(b)(5)(iii)-(iv).

evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commission must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commission's findings are supported by substantial evidence. *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987); *see also Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 2002).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

**DISCUSSION**

Plaintiff claims that the ALJ erred in rejecting: (1) the opinions of her treating psychiatrist and examining physician and (2) her subjective symptom testimony.

**1. The ALJ's Evaluation of the Medical Evidence as a Whole is Based on Substantial Evidence in the Record**

First, Plaintiff argues that the ALJ erred by failing to adopt the opinions of her treating psychiatrist John Schaeffer, D.O. and consultative internist, Rustom F. Damania, M.D. (Doc. 18 at

6

7-11). Specifically, Plaintiff argues that because the ALJ erred in her disagreement with Plaintiff's treating psychiatrist and the ALJ had a duty to develop the record and order an independent psychiatric assessment of Plaintiff. (Doc. 18 at 10). With respect to Plaintiff's physical limitations, Plaintiff argues that the ALJ erred in discounting the opinion of her examining physician. (Doc. 18 at 11).

### A.   Legal Standard

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d at 647. At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456. In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor. *E.g., Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews*, 53

F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995). For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians . . .." *Magallanes*, 881 F.2d at 752. Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion. *Id.* at 751-52. The opinions of nonexamining physicians are substantial evidence where they are supported by clinical findings and objective tests. *Id.*

### B. The ALJ Correctly Weighed Dr. Schaeffer's Opinion

With regard to Dr. Schaeffer's opinion, the ALJ found:

> On August 24, 2012, treating physician, John Schaeffer, D.O. completed a mental residual functional capacity questionnaire. Therein, he opined the claimant had a very good ability to understand, remember and carry out short and simple instructions, but was unable to meet competitive standards in the ability to understand, remember, and carry out detailed ones. Dr. Schaeffer further opined the claimant was unable to meet competitive standards regarding his ability to set realistic goals, deal with the stress of semiskilled work, interact appropriately with the public, and maintain socially appropriate behavior. He also opined the claimant would miss about 3 days of work per month. I gave little weight to this opinion because it is inconsistent with the evidence, including mental status examinations that showed she was cooperative, exhibited normal speech, and presented with good judgment, insight, and impulse control. Nevertheless, I also note the limitation to the performance of simple repetitive tasks with no general public interaction, and job tasks that primarily involve working with objects adequately accounts for most of the limitations assessed by Dr. Schaeffer.

Plaintiff argues that the ALJ erred in discounting Dr. Schaeffer's opinion as inconsistent with Plaintiff's largely normal mental status examinations. Plaintiff argues that to the contrary, Dr. Schaeffer's mental status examinations rarely demonstrated that Plaintiff had "normal" functioning. However, Plaintiff's argument is misguided. The ALJ rejected Dr. Schaeffer's opinion because it was inconsistent with not only Dr. Schaeffer's own findings but with the overall medical evidence. AR 14. The evidence as a whole supports the ALJ's determination that Dr. Schaeffer's opinion conflicted with his own clinical findings as the record demonstrates that Plaintiff's impairment had significantly improved as of November 1, 2011 and she was capable of working as set forth in the RFC. For example, beginning in September 2010, mental status evaluations by Dr. Schaeffer and other clinicians yielded largely normal results and showed, e.g., Plaintiff was cooperative; had

normal speech; showed good insight, judgment, and impulse control; exhibited average intelligence; showed goal directed thought processes; and had normal thought content. *See, e.g.*, AR 498, 503, 511, 516, 529, 532, 551, 553; AR 14. Dr. Schaeffer and other clinicians indicated Plaintiff was stable on her medications, her treatment contributed to improvement, and her depression and mood swings were in remission. *See, e.g.*, AR 504, 511, 517, 529, 532, 549; AR 11.

Even though records showed Plaintiff was worried about the termination of her SSI benefits, she indicated her medications were "fine" and her mental status evaluations continued to show largely normal findings, such as linear and goal directed thought processes, logical thought content, average intelligence, good impulse control, and the capacity to understand cause and effect and the consequences of her actions. AR 548-549. Plaintiff herself also stated she had no complaints and asserted she was doing well. AR 514, 516. Plaintiff's GAF score of 61 further underscored her medical improvement and supported the ALJ's findings that she had only mild symptoms and was generally functioning well. *See* AR 504, 560; *see also* AR 11). *See Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 598-99 (9th Cir. 1999) (affirming ALJ finding of nondisability where record contained GAF scores ranging from 45 to 61).

Plaintiff's most recent GAF score of 61 further contrasted Dr. Schaeffer's findings as it demonstrated significant medical improvement from Plaintiff's condition at the time of her original period of disability. For example, in 2003, mental status evaluations revealed Plaintiff had poor concentration; her mood was depressed and irritated and her GAF scores generally ranged from 15-50 during this period. *See* AR 298, 324, 413. At that time, clinicians observed that Plaintiff's anxiety and depression interfered with her ability to function, but treatment notes demonstrated that Plaintiff had never previously received treatment. AR 297. After reviewing the medical evidence as a whole, the ALJ correctly found that this improvement undermined Dr. Schaeffer's opinion that Plaintiff would be unable to "meet competitive standards" and "deal with stress appropriately." AR 14.

Nonetheless, the ALJ credited Dr. Schaeffer's opinion but overall determined that Dr. Schaeffer's findings were more consistent with Plaintiff's limitation to "simple repetitive tasks with no general public contact." AR 14. This was an appropriate consideration as the ultimate determination of disability (*i.e.* whether a claimant can perform work in the national economy) rests solely with the Commissioner. 20 C.F.R. 416.927(e); *see also, Tonapetyan*, 242 F.3d at 1148-49

(ALJ not bound by opinion of treating physician with respect to ultimate determination of disability). These reasons were sufficient to reject Dr. Schaeffer's opinion and were supported by substantial evidence. Accordingly, the Court finds no error in the ALJ's decision rejecting Plaintiff's treating physician's opinion.

Finally, to the extent that Plaintiff contends that the ALJ "should have secured an independent assessment to flush out whether [Plaintiff] did improve," it is similarly unpersuasive. Plaintiff correctly argues that "[i]n Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 2003). The ALJ's duty to develop the record further is triggered, however, only by ambiguous evidence, the ALJ's own finding that the record is inadequate, or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *also see Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (the ALJ has a duty to develop the record or "conduct an appropriate inquiry" when the evidence is ambiguous or the ALJ finds the record is not sufficient for him to evaluate the evidence and make a determination as to Plaintiff's alleged disability). However, here, the record was sufficient for purposes of evaluating the evidence and making a disability determination. Plaintiff does not identify any inadequacies or ambiguities in the medical evidence and there was no ambiguity regarding Plaintiff's medical improvement. While Plaintiff points to differing medical opinions about the severity of Plaintiff's mental impairment, it is the province of the ALJ to resolve conflicts in the medical opinions, and she did so properly here by giving less weight to Dr. Schaeffer's opinion because it was inconsistent with the record as a whole. AR 11, 14. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (where medical opinions differ, "it is then solely the province of the ALJ to resolve the conflict") (*citing Magallanes*, 881 F.2d at 751).

The ALJ properly relied on the objective medical evidence, taken together with the opinions of reviewing physicians. There were no conflicts or ambiguities that had to be resolved. Accordingly, the ALJ did not err in discounting Dr. Schaeffer's treating opinion.

### C. The ALJ Correctly Weighed Dr. Damania's Opinion

Plaintiff also complains that the ALJ erred in giving little weight to the opinion of Dr. Damania, who opined that Plaintiff could lift and carry only 20 pounds occasionally and 10 pounds

10

frequently but otherwise had no restrictions in her functional capacity. (Doc. 18 at 11). The ALJ, however, properly discounted Dr. Damania's recommended limitations as inconsistent with his own examination findings and other evidence in the record. AR 12-13. See 20 C.F.R. § 416.927(c)(4) ("[T]he more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

> With respect to Dr. Damania's opinion, the ALJ found as follows:
>
> On March 15, 2013, Rustom F. Damania, M.D., performed a consultative internal medicine evaluation. He opined the claimant was able to lift and carry 20 pounds occasionally, 10 pounds frequently, and sit, stand, and walk without restriction. Dr. Damania further opined the claimant had no postural, manipulative, visual, or communicative limitations. I afforded only limited weight to this opinion because it is inconsistent with Dr. Damania's own examination findings, which showed she was in no distress, ambulated with a normal gait and exhibited full motor strength with good muscle tone in the extremities. Accordingly, I found her more capable from an exertional standpoint as that is most consistent with the evidence. Dr. Damania's opinion was further discounted because it did not adequately account for asthma.
> AR 13.

As the ALJ explained, Dr. Damania's physical examination yielded benign and unremarkable findings that did not support the extreme limitations he proposed. AR 13. For example, Dr. Damania observed Plaintiff was in no distress; walked with a normal gait; had a normal range of motion in her neck, back, upper extremities, and lower extremities; she had no tenderness or muscle spasm in her back; and she exhibited full motor strength with good muscle tone in her extremities. AR 487-489; see AR 13-14. Indeed, Dr. Damania failed to identify any basis or explanation to support the limitations he urged on lifting and carrying. AR 489; see AR 13. See 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion . . . the more weight we will give that opinion."). To the contrary, his assessment indicated that Plaintiff's back had "no tenderness to palpation in the midline or paraspinal areas. Straight leg raising is negative at 90 degrees. Laseque's sign is negative. There is no muscle spasm and muscle tone appears to be equal throughout." AR 488. Dr. Damaina further found that Plaintiff can "stand and walk without restriction" and Plaintiff "can sit without restriction." AR 489. "No assistive device is necessary for ambulation. No postural limitations. No manipulative limitations." AR 489. There are no clinical findings from Dr. Damania that demonstrate any reason to limit Plaintiff's ability to lift or carry. Plaintiff also does not identify any medical evidence supporting the limitations found by Dr. Damania. (Doc. 18 at 11).

11

The ALJ properly considered the inconsistencies between Dr. Damania's conclusory opinion and his own benign examination findings in affording little weight to his opinion. An ALJ need not accept the opinion of any medical source, including a treating medical source, "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas,* 278 F.3d at 957; *accord Tonapetyan*, 242 F.3d at 1149. Dr. Damania's unsupported findings are precisely the type of conclusory statements afforded no special weight in accordance with the Social Security regulations. This reason was sufficient to discount Dr. Damania's opinion as unsupported by substantial evidence. Accordingly, the Court finds no error in the ALJ's decision discount the examining physician's opinion.

### 2. The ALJ Gave Sufficient Reasons to Reject Plaintiff's Subjective Testimony

Plaintiff next contends the ALJ failed to properly consider her credibility. Specifically, Plaintiff argues that the ALJ did not provide adequate reasons to reject her credibility. (Doc. 18 at 13). The Court disagrees.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (*quoting Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). At the first step, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. AR 15.

"Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints[.]'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted). At the second step, the ALJ addressed Plaintiff's credibility as follows:

> In this case, the claimant's allegations are less than fully credible because of the inconsistencies and unsupported statements. For example, she testified to

12

> experiencing many mood swings and only being able to concentrate for 15 minutes. However, these allegations are not supported by the evidence, which showed good impulse control with normal thought content and organized thought processes. The limitation to only concentrating for 15 minutes is also inconsistent with her demonstrated ability at the hearing, were she paid attention and responded appropriately throughout the entire duration (over 40 minutes). The claimant also reported her ability to lift, squat, reach, walk, and kneel are all "affected," because of back pain, but that is not supported by the record, which showed no back pain or weakness. Furthermore, these significant physical limitations are inconsistent with examination findings, which revealed full motor strength with good muscle tone in bilateral extremities. These inconsistent and unsupported statements significantly diminish credibility, namely with regard to the allegation she is unable to work.
>
> In sum, the above residual functional capacity assessment is supported by the overall medical evidence of record for the reasons discussed above. The extent of the claimant's subjective complaints is not supported by the medical evidence of record and her credibility is diminished because of inconsistent statements and unsupported allegations.

AR 15.

In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing SSR 88-13, 1988 SSR LEXIS 14) (quotation marks omitted). The ALJ may also consider (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas*, 278 F.3d at 958-59.

Here, the ALJ discounted Plaintiff's credibility because of the lack of objective medical evidence supporting the degree of limitations, exaggerated complaints, and inconsistencies between Plaintiff's subjective allegations and her conduct. AR 15.

Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis. *Burch*, 400 F.3d at 681. First, the ALJ noted that Plaintiff's physical examination findings showed minimal abnormalities. AR 15. Treatment notes showed good muscle tone and good motor strength, despite complaints of back

pain. AR 15. Plaintiff's physical examinations yielded generally normal findings belying Plaintiff's claim of being disabled and unable to work. AR 14-15. The ALJ properly considered these inconsistencies and unsupported statements in finding Plaintiff not fully credible. AR 14-15; *See* 20 C.F.R. § 416.927(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . . ."); *Bray v. Astrue*, 554 F.3d 1219, 1227 (9th Cir. 2009) (finding the ALJ properly discounted the claimant's testimony where her statements "[did] not comport with objective evidence in her medical record").

Second, the ALJ also considered Plaintiff's exaggerated complaints in the credibility evaluation. *Thomas*, 278 F.3d at 958-59. The ALJ noted that while Plaintiff testified that she could only concentrate for 15 minutes at a time, Plaintiff testified for over 40 minutes at the hearing. Plaintiff demonstrated focus, paid attention throughout the entire hearing and answered appropriately to the ALJ's questions. *See Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). (ALJ may consider his personal observations at the hearing as part of the overall credibility evaluation). The ALJ also assessed Plaintiff's ability to concentrate and noted that her hobbies included regularly watching television (AR 15, 253, 265), and her mental status evaluations consistently showed she had good insight, judgment, and impulse control; goal directed thought processes; and normal thought content. See AR 15.

Finally, the ALJ may properly consider the inconsistencies between Plaintiff's testimonies and conduct when weighing Plaintiff's credibility. *Thomas*, 278 F.3d at 958-59. The ALJ noted that Plaintiff testified to experiencing many mood swings. Yet the ALJ observed that during the hearing, Plaintiff sat through the full duration of the hearing and answered questions appropriately without incident. AR 15.

Overall, the ALJ summarized portions of the medical evidence, and she applied that medical evidence to an analysis of Plaintiff's credibility. AR 15. As Plaintiff correctly notes, an ALJ may not discredit the claimant's testimony "solely because the degree of pain alleged by the claimant is not supported by objective evidence." *Bunnell*, 947 F.2d at 347. However, here the ALJ made several observations beyond the objective medical evidence that undermined Plaintiff's credibility.

14

Given the above, the ALJ provided clear and convincing reasons that are supported by substantial evidence when concluding Plaintiff's subjective symptom testimony was not credible. The ALJ clearly identified what testimony she found not credible and what evidence undermined Plaintiff's complaints. *Lester v. Chater,* 81 F.3d at 834. If the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing." *Thomas,* 278 F.3d at 959. Accordingly, the ALJ's credibility findings are free of legal error.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security and against Plaintiff, Venus Gideon.

IT IS SO ORDERED.

Dated: __**September 22, 2015**__          __/s/ Barbara A. McAuliffe__ _
                                           UNITED STATES MAGISTRATE JUDGE